MONCURE, P.,
delivered the opinion of the court.
*This a writ of error to a judgment of the circuit court of Patrick county, convicting the plaintiff in error, Lee Reynolds, of murder in the second degree, and ascertaining the term of his imprisonment in the penitentiary therefor to be eighteen years.
On the 39th day of January, 1878, Burwell Reynolds and the said Lee Reynolds were jointly indicted in the county court of said county for the murder of .Aaron C. Shelton. On the 31st day of January, 1878. the accused were arraigned for the said offence and plead not guilty to the indictment therefor. Whereupon, electing to be tried separately, and demanding to be so tried in the circuit court of said county, they were remanded to jail for separate trials before the said *615 circuit court on the said indictment, at the next term thereof.
At which term, to-wit: in April, 1878, the said Lee Reynolds was accordingly tried separately for the said offence on the said indictment, and the jury sworn to try him, found a verdict against him in these words: “We the jury find the prisoner Lee Reynolds guilty of murder in the second degree, in manner and form as charged in the indictment, and ascertain the term of his confinement in the penitentiary to be the period of fifteen years.” Thereupon the said prisoner moved the court to set aside the verdict and grant him a new trial, on the ground that the said verdict was against the law and the evidence. But the court overruled the said motion and rendered judgment according to the said verdict. The said prisoner excepted to the said action of the court, and all the facts proved on the trial were certified in the bill of exceptions.
To the said judgment of the circuit court rendered in April, 1878, a writ of error was awarded by this court, upon which the said judgment was reversed, and *the cause was remanded to the said circuit court for a new trial to be had therein.
Accordingly such new trial was thereafter had, to-wit: in October, 1878, when a verdict was found in the case by a jury, in these words: “We the jury find the prisoner Lee Reynolds guilty of murder in the second degree, and ascertain the term of his confinement in the penitentiary to be eighteen years.” Whereupon the prisoner moved the court to set aside the verdict and grant him a new trial; which motion the court overruled; to which action of the court the prisoner excepted. In his bill of exceptions, all the facts proved on the trial were certified.
The said verdict having been rendered, and the said motion to set it aside having been overruled, judgment was thereupon rendered by the court; to which judgment the writ of error in this case was awarded by this court. Whether the said judgment be erroneous or not, depends upon the question whether the said verdict of the jury was warranted by the facts certified to have been proved on the last mentioned trial? To decide that question, it will therefore be necessary to state and consider the facts so certified. They are as follows:
“That A. C. Shelton had become provoked some time preceding the homicide because a vounger brother had been ducked by the children of a negro school, for hallooing ‘school-butter;’ of which school Lee Reynolds was a member. His brother, Burwell Reynolds, who was jointly indicted with him. took an active part in the ducking. This took place about three weeks before the homicide. On the morning before the homicide, Aaron C. Shelton passed the schoolhouse in which the school wasthen in session, hallooed ‘school-butter,’ and passed to his work without *any disturbance, about four hundred yards, to where he was going to load his wagon with saw logs, in which business he was at that time engaged. At recess of the school on the same day the teacher having left his school in charge of one of the grown and advanced scholars, another brother of Aaron C. Shelton, about thirteen years of age, approached the school-house at a distance of 150 yards, and hallooed ‘school-butter.’ The members of the school then pursued him until they got to where Aaron C. Shelton was standing in the road with a stick in his hand, his uncle, Asa Tuggle, being present; this place was about 400 yards from the place where his saw logs were, and in the direction of the school-house. Aaron C. Shelton having understood some one to call him a rogue, and was told by one of the school children that it was Puss Reynolds, the sister of Lee and Burwell Reynolds, whereupon an altercation took place between Shelton and the school children in which he abused Puss Reynolds. The school children then turned back to the schoolhouse, Aaron C. Shelton following then with a rock and stick, stating to them that his brother had been ducked a short time before, and he might pass there when he damned pleased and halloo ‘school-butter,’ and if he was ducked again, he would shoot their heart-strings out, and if the teacher interfered, he would shoot him if he had to follow him into the school-room.
“Neither Lee nor Burwell Reynolds were present on this occasion, but Aaron C. Shelton shook a stick over the head of Puss Reynolds, a sister of Lee and Burwell Reynolds, and asked her who it was that called him a rogue; she said, ‘No one;’ and asked Shelton what all this meant; he replied,‘One of your brothers ducked my little brother sometime ago.’ She said her brother did not duck his brother, but only patted a little water on his head. Shelton then said he would *pat for him, and used abusive language to her, which the witness declined to repeat in court.
“Marv Burwell, one of the witnesses for the defence, informed Burwell and Lee Reynolds, that evening, of the manner in which Aaron C. Shelton had abused their sister. Late in the evening of the same day, Shelton returning home from his work, found Burwell and Lee Reynolds trying to roll one of the saw logs that had been cut by his uncle, which he intended carrying to the saw-mill, out of the road down a hill. A road had been cut by the uncle of Shelton by which any one could pass around the log without any inconvenience. Shelton asked Lee Reynolds what he was doing. Pfe said they were going to roll that log out of the road. Shelton cursed them, and told them if they did he would thrash them. Lee and Burwell then passed on around the log in the direction of the school-house, and Shelton stopped at the log about a quarter of an hour, and then went on in the same direction, on his way home When he got to the school-house he found Lee and Burwell standing on the side of the road from which they had turned to let Shelton pass, with an axe which they used at the school-house. Lee addressed Shelton and told him he and Burwell were come hack to the log, at which he had just found them, the next morning, and were going *616 to roll that log out. and if he interferred with them they would shoot him, and if he ran they would make their dogs catch him. This threat was denied by Burwell Reynolds, who was introduced as a witness, and stated that Shelton stopped in the road and said he had not forgotten him for ducking 'my brother.’ Green Shelton, the brother of Aaron C. Shelton, was the witness to this threat. Aaron C. Shelton passed the school-house on Wednesday morning and on Thursday morning, hauling his logs without interfering with the *school. On Wednesday Shelton received a message, purporting to come from Lee Reynolds, saying that he intended to move that log, arid that he had his gun with him, and if he, Shelton, interfered with him he would shoot him. On Wednesday morning following the past difficulty on Tuesday before, the prisoner, with his brother Burwell, went back to their farm. On their way they were informed by Asa Tuggle, the uncle of the deceased, that Aaron C. Shelton told him to tell them that if he caught them on that road he would beat them. They received the same warning on Thursday morning from the same source. They went on to their farm, finished their work, and about 3 o’clock P. M. were returning the same road; Burwell driving the slide with some little loading on it. The prisoner was walking in front with a gun and stick. They came to a tree across the road which had been cut by Tuggle since they went down in the morning. It was cut into saw logs. The second cut had been hauled away. There was one across the road. They moved the log out of the way to pass with the slide, and while in the act of moving, Asa Tuggle, who had cut the log, and who was engaged for that purpose by Shelton, said, 'Now, boys, you have moved that log and you must take the result.’ Burwell drove on up the road, which was a single track about 15 paces, and turned short around a tree into the brush out of the road. The deceased drove his wagon up opposite the rear of the slide, in the only track a wagon could have passed, and stopped at least 5 'or 10 paces before it was necessary to have stopped in order to load his log, but had stopped further from the log the day before. And the slide could have passed out behind the wagon after it stopped.
“There was a conflict of testimony at this point, as to how the difficulty occurred— whether Lee Reynolds *drew the stick upon the deceased, or whether the deceased ordered him to drop it — but that the deceased did get the stick into his possession, and that Lee Reynolds backed, and the deceased followed him, in a scuffle over the gun, for fifteen paces, until the prisoner got to the log; then Shelton struck him with, the stick, and knocked him over the log. At this moment Burwell Reynolds, who was with the slide, came up from the rear and stabbed Shelton in the back with a large tobacco knife. It was proved that it was eighty yards from the slide to where Shelton was first seen with his wagon by the prisoner, and that the slide could have passed the wagon at other and better places in that distance. Which is accordingly certified.
“Wm. M. Tredway. [Seal.]”
The court is of opinion that the circuit court erred in overrulingthe motion of the prisoner, Lee Reynolds, to set aside the verdict and grant him a new trial. The facts certified by the court below to have been the facts proved on the trial before that court, did not at all warrant the verdict of the jury nor the judgment of the court thereon, to which the writ of error in this case was awarded. The facts certified to have been proved at the last were the same in substance with the facts certified to have been proved on the former trial in the same case. This court was unanimously of opinion that those facts were wholly insufficient to sustain the verdict rendered upon them against the prisoner, and therefore reversed the judgment rendered upon that verdict, and remanded the cause to the court below for a new trial to be had therein. Such new trial has accordingly been had, on which the same facts substantially which were proved on the .former trial are certified to have been again proved, and no other, on the latter trial; and yet the jury, on that *trial, convicted the prisoner of the same offence as on the former trial, and ascertained the term of his confinement in the penitentiary therefor to be eighteen years —-three years more than the term ascertained by the jury on the former trial. And the court which presided at the said trials overruled the motion of the prisoner to set aside the verdict and grant him a new trial, and rendered judgment according to the verdict on the latter occasion, as had been done on the former, notwithstanding the judgment of this court reversing the former judgment of the court below, upon the ground that the facts certified by that court to have been the facts proved on the former trial were, according to the unanimous opinion of this court, wholly insufficient to warrant the verdict rendered by the jury on that trial.
The prisoner certainly did not kill the deceased; nor do the facts certified show, or even tend to show, that he assented in any way, or to any extent, to the said killing, nor to the act by which it was done, nor to its being done by any other act or any other person. The prisoner never struck the deceased, nor offered to strike him, nor assented to his being struck by any other person. He was a youth going to school at the time the homicide was committed, and near the place of its commission. He and his brother Bur-well Reynolds were living with their father and working for him on his farm, near the place where they were going to school. On the day on which the homicide was committed they went in the morning from the place where the school was kept to their father’s farm and returned in the evening to the place of the school. When they got near to the latter place, in driving along the road, there was a saw log lying in the road, which had been cut and put there by the deceased or his direction; he being engaged in hauling logs to a saw-mill. At that *point they *617 were overhauled by the deceased who was driving a wagon and seems to have been about to haul the log in question. He was not prevented by them from so doing, nor did they say anything to him on the subject. When they were approaching the log in the road it seems that Burwell Reynolds was driving the slide, and Lee Reynolds was walking with a stick and a gun in his hand, which latter it seems he was in the habit of carrying about with him. It is stated, in the certificate of facts, that “there was a conflict of testimony at this point as to how the difficulty occurred; whether Lee Reynolds drew the stick upon the deceased, or whether the deceased ordered him to drop it; but that the deceased did get the stick into his possession, and that Lee Reynolds backed and the deceased followed him in a scuffle over the gun for fifteen paces until the prisoner got to the log, then Shelton struck him with the stick and knocked him over the log. At this moment Burwell Reynolds, who was with the slide, came up from the rear and stabbed Shelton in the back with a large tobacco knife.”
Nowit does not appear that Lee Reynolds had any thing to do with the stabbing of the deceased, or any knowledge of any intention on the part of Burwell Reynolds to stab or kill him, or that the said Burwell at that time had in his possession the knife by which the stabbing was done, or any other weapon; nor that any effort was made to use the gun which Lee Reynolds then happened to have in his hand; nor that the said gun was then loaded, even with bird-shot. The deceased pursued Lee Reynolds, took away his stick, attempted to take away his gun, and knocked him over the log. During all this time, and notwithstanding this violence on the part of the deceased towards the prisoner it does not appear that the latter gave to the former a single blow, or that such a blow was ever *given. In this state of things
' ' "Burwell Reynolds, who was with the slide, came up from the rear and stabbed Shelton in the back with a large tobacco knife.”
Now how can Lee Reynolds be made liable for this act which he did not commit, to which he did not consent, and of which he had no knowledge nor information until it was done.
There is much evidence in regard to disputes between the deceased and scholars at the school to which Lee Reynolds was going at the time of the homicide, but it is not material to this case nor necessary to notice it here.
The facts certified are so insufficient to sustain the verdict that upon a demurrer to evidence judgment ought to have been given in favor of the demurrant.
When this case was placed in the hands of this court the learned attorney-general was so well satisfied that the judgment ought to be reversed that he said so to the court; which was very proper under the circumstances.
The court is therefore of opinion that the said judgment is erroneous and must be reversed, and the cause be remanded to the court below for a new trial to be had therein.
The judgment was as follows:
This day came again as well the plaintiff in error by his counsel as the attorney-general on behalf of the Commonwealth, and the court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is unanimously of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in overruling the motion of the prisoner, Lee Reynolds. *the plaintiff in error, to set aside the verdict and grant him a new trial; this court being decidedly of opinion that the facts, certified by the court below to have been all the facts proved upon the trial, were wholly insufficient to warrant the said verdict, and that even if the said prisoner had demurred to the evidence on the said trial, the judgment of the court below upon the facts certified, ought to have been in favor of the demurrant.
Therefore it is considered that the said judgment of the said circuit court to which the writ of error was awarded in this case, be reversed and annulled; and that the cause be remanded to the said circuit court for a new trial to be had therein.
Judgment reversed.